IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID MORGENSTERN | : | CIVIL ACTON |
|  | : | NO. 08-0562 |
|  | : |  |
| v. | : |  |
|  | : |  |
| PENNSYLVANIA CONVENTION | : |  |
| CENTER AUTHORITY d/b/a/ | : |  |
| PENNSYLVANIA CONVENTION | : |  |
| CENTER, ALBERT MEZZAROBA and | : |  |
| SYLVIA CARRASQUILLO | : |  |
|  | : |  |

O'Neill, J.                                                                                                                                                                                                     October 31, 2008

### MEMORANDUM

Plaintiff David Morgenstern filed a complaint against defendants Pennsylvania Convention Center Authority d/b/a/ Pennsylvania Convention Center (PCCA), Albert Mezzaroba, Sylvia Carrasquillo, Fox Television Stations of Philadelphia d/b/a/ Fox 29 Philadelphia, Fox Television Stations, Inc., Jeff Cole, Philadelphia Media Holdings, LLC, d/b/a Philadelphia Daily News, Dave Davies, Gar Joseph, International Brotherhood of Electrical Workers, Local 98 and John J. Dougherty for claims surrounding a PCCA investigation into and subsequent media attention about a false allegation that he was conducting an online relationship with a 15-year-old girl. Morgenstern's complaint against defendants PCCA, Albert Mezzaroba, Sylvia Carrasquillo (referred to collectively as PCCA defendants) alleges a violation of his procedural due process rights, a violation of his equal protection rights, and negligence. Before me now are PCCA defendants' motion to dismiss Morgenstern's claims of procedural due process violation and negligence, plaintiff's response, defendants' reply, and plaintiff's sur-reply.

BACKGROUND

Plaintiff David Morgenstern was employed at the Pennsylvania Convention Center Authority (PCCA) for more than 10 years and was serving as Acting Director of Event Services when he was summoned to the offices of defendant Albert Mezzaroba on April 6, 2007.  There, Morgenstern was informed that a father had complained to PCCA that Morgenstern was having inappropriate internet contact of a sexual nature with his 15-year-old daughter.  While Morgenstern acknowledged his internet communications with the female, and admitted that the contact was not work related, he told Morgenstern that she had represented herself to be 23 years old.  Mezzaroba offered Morgenstern the option of resigning or taking a family-medical leave of absence while an investigation into the allegations was completed.  Morgenstern submitted a written request for a leave of absence to Sylvia Carrasquillo the following day and the leave request was approved.

Defendant John Dougherty of the International Brotherhood of Electrical Workers, Local 98 (IBEW) somehow learned of the allegations against Morgenstern sometime between April 6, 2007 and June 11, 2007.  Dougherty admitted in a subsequent interview for a Pennsylvania Daily News Article (Article) to passing along the information about the investigation to defendant Jeff Cole of defendant Fox 29 (the Cole Comment).

Cole, acting upon Dougherty's tip, recorded an unannounced interview at Morgenstern's home on June 11, 2007.  The report (First Report) ran that night in the Fox 29 evening news broadcast.  A transcript of the First Report is reprinted below:

> Dawn Stensland: A manager at the Philadelphia Convention Center is at the center of controversy after his boss receives a complaint about on-line contact with a 15 year-old girl.

Dave Huddleston: It is a Fox 29 Undercover exclusive tonight. Jeff Cole is here with the story.  Jeff.
Jeff Cole: Dave, his name is David Morgenstern and he is the Acting Director of the Events Services at the Convention Center.  He has worked there for over ten years, but tonight he is on leave while Convention Center authorities await the results of an investigation of his on-line activities.
Jeff Cole: The Convention Center manager is this man, David Morgenstern.  His job is to be one of the go-to guys in this set-up for the big trade shows and exhibits that come here.  But about two months ago, Morgenstern went on family and medical leave after a man, claiming to the father of a 15 year-old girl, accused him of having an inappropriate on-line relationship with his daughter.
Jeff Cole: Mr. Morgenstern….. We asked Morgenstern about the claim Monday.
David Morgenstern: It is not true.
Jeff Cole: What is true about it?
David Morgenstern: I wasn't suspended, I am on medical leave.
Jeff Cole: Because of it?
David Morgenstern: I don't want to talk to the press.
Jeff Cole: Sir, before you go, I'm told the father of a 15 year-old called to complain about you.  Is that correct?
David Morgenstern: She said she was 23.
Jeff Cole: She said she was 23?  Sir, one other thing.
Jeff Cole: According to a Convention Center spokesperson, the Center's CEO, Al Mezzaroba, seen here in file video but who was on vacation and not available for comment, took the call from the father, questioned David Morgenstern, and opened an investigation.
Jeff Cole: The Center's Executive Vice President, Ahmeenah Young says, the e-mails have been described to her as sexual in nature. She said the Center wants to know if Morgenstern sent them, and did he do it from a Convention Center computer.
Jeff Cole: Is there any indication that he did that?
Ahmeenah Young: There may be some, and that is why we have taken his hard drive, and I think that is the part of it and it is going off to an expert, a forensic expert.
Jeff Cole: Young says the Center is awaiting reports from that expert and an outside law firm in the next ten days.  But despite knowing about the claim of the inappropriate on-line relationship with a 15 year-old girl for two months, Convention Center authorities have not notified law enforcement.
Jeff Cole: Have you alerted the authorities?
Ahmeenah Young: No, we have not alerted the authorities.
Jeff Cole: Why won't you alert the authorities if you believed it was inappropriate with a 15 year-old?
Ahmeenah Young: Why hasn't the father alerted the authorities?  I think that is a question for the father.  If he has the e-mails, he has seen it, if we need to alert the authorities we absolutely will.
Jeff Cole: A spokesperson for the Convention Center at first said the original call of

complaint was anonymous.  But when Fox Undercover told him that we have learned the name of the 15 year-old, the spokesperson later called back to say that in fact, the caller had identified himself as the father of the 15 year-old, had left his name, and a cell phone number.
Jeff Cole: In the meanwhile, the leader of the area's electrical workers union, whose members work at the Convention Center says he raised similar concerns about David Morgenstern four years ago.
John Dougherty: I had asked for some answers, and at the time, I was told that it was nothing like I had suggested, and that they were going to handle it, and they were just going to get some people help.
Jeff Cole: And late Tuesday, Morgenstern claimed he did not use Convention Center computers to contact the girl and says he is no longer in touch with her.
Jeff Cole: Mr. Morgenstern, Mr. Morgenstern, you believe that this young woman was 23.
David Morgenstern: She said she was 23.
Jeff Cole: She said she was 23?  But now you know…
David Morgenstern: She signed up she was 23 and when she said she was younger, I ended it.
Jeff Cole: Convention Center officials say they will turn over the results of their investigation to the police or the attorney general no matter what is found. They say the father was calling from a southern state and add [sic] he demanded that Morgenstern be fired. Jeff Cole, Fox 29 Undercover.

On June 22, 2007, the Philadelphia Daily News ran the Article written by Dave Davies and Gar Joseph regarding the allegations against Morgenstern.  The Article was advertised on the front page as "Sexcapade at the Convention Center" and was written as follows:

> Did Pennsylvania Convention Center officials try to cover up a sex scandal?  Or were they keeping a personnel matter private, as they are obliged to do?
> The issue became public last week when Fox 29 investigative reporter Jeff Cole revealed that David Morgenstern, acting director of events services, was suspected of sex chat with a 15-year-old girl on a Convention Center computer.
> The underage girl's father discovered the chat in April.  He complained to Convention Center President Al Mezzaroba.
> Mezzaroba launched an internal investigation, seized Morgenstern's computer hard drive and placed him on paid "family-medical" leave.
> Here's what Mezzaroba didn't do: Contact law enforcement.
> "There's nothing in the criminal code that would require Convention Center executives to contact the authorities," said Kevin Harley, spokesman for state Attorney General Tom Corbett, "but I'd say you have a moral and ethical obligation, particularly actions of this type, to report it."

   Mezzaroba said he believed it was the duty of the girl's father, whom he described only as a man living in a southern state, to call authorities.

   "We're not sure a crime has been committed," Mezzaroba said.  Convention Center board chairman Buck Riled "has made a promise that whatever is discovered will be turned over to the attorney general."

   "I didn't know the Convention Center was an investigative body," said Harley.

   No one has alleged criminal activity against Morgenstern, who told Cole in a brief interview that the underage girl claimed to be 23.

   "The only allegation is misuse of a computer," Mezzaroba said.  "Our obligation is to make sure an employee didn't do anything improper on our time."

   He declined to discuss details of the case since it's a personnel matter.

   Harley said whether a crime was committed would depend on the nature of the conversations with the teen girl and whether pornography was exchanged.

   "If the Convention Center would like to share their information with us, we'd certainly be interested in pursuing it," Harley said.

   Meanwhile, John Dougherty, head of the Redevelopment Authority, which has been acquiring land for the Convention Center's expansion, told Fox 29 that he'd raised the issue of sexual impropriety among center employees four years ago.

   A Convention Center source told us that Morgenstern was admonished by management several years ago for improper use of his computer.  The nature of the improper use couldn't be determined.

   Our guess is that Convention Center officials would like Dougherty to keep quiet about this.

   "Whenever Doc has had a chance to take a shot at the [Convention Center] board, he has," said Mezzaroba.  "Before he had [former board chairman] Michael Nutter to shot at, but now I guess he just has me."

   Dougherty returned fire saying, "It's a shame that this is Al Mezzaroba's management style: politics, politics, politics.  I've just finished working with the board and the governor to put together a successful acquisition of land [for the expansion] in record-setting time and at a lower price than expected, so I have no problem with the board."

   Dougherty said he blabbed to Fox 29 because "there are a lot of uneasy people at the Convention Center because they know some of the activities going on there might not be illegal, but are very immoral and very unethical."

   He declined to elaborate.  But we have a feeling another shoe or two will drop before this saga ends.

On July 2, 2007, Morgenstern avers that Carrasquillo summoned him to the PCCA office and, according to Morgenstern, "abruptly terminated" his employment for violations of the computer-use policies without stating any conclusions about the nature of his contact with the

5

woman or any conclusions about her status as a minor.

On July 5, 2007, Cole ran a follow-up report on the Fox 29 evening news (Second Report). Morgenstern alleges that the Second Report also portrayed him as having had inappropriate contact with a minor and that it suggested that the prior allegations against him had been confirmed by his termination. A transcript of the Second Report reads as follows:

> Dawn Stensland: The Pennsylvania Convention Center says tonight that it has parted ways with a top employee. While the worker's attorney says he has been terminated and is not sure why. Fox 29 Undercover reporter Jeff Cole first reported this story of David Morgenstern. Here is Jeff with the latest.
> Jeff Cole: There was no answer at David Morgenstern's Northeast Philadelphia home Thursday, but not long after we knocked, there came a call from his attorney, who confirmed Morgenstern is no longer a Convention Center worker.
> William Brennan: He has been terminated. He was notified on Monday that the Center has terminated his employment.
> Jeff Cole: Brennan says Morgenstern who held the job of Acting Director of Event Planning does not fully understand why he has been fired. In June, Fox 29 Undercover reported Morgenstern went on family medical leave in April after the Convention Center says a man claiming to be the father of a 15 year-old girl accused him of having an inappropriate, on-line relationship with his daughter. Last month Morgenstern quickly spoke to us.
> Jeff Cole: Sir, before you go. I'm told the father of a 15 year-old called to complain about you. Is that correct?
> David Morgenstern: She said she was 23.
> Jeff Cole: She says she was 23?
> Jeff Cole: The call came from a southern state says the Convention Center and was taken by the Center's CEO, Al Mezzaroba, who opened an investigation. A Center Vice President said in June she understood the on-line contact to be sexual in nature and said the Center had hired a law firm to investigate if Morgenstern had been in contact with the girl and if he had done it on Convention Center computers.
> Jeff Cole: Is there any indication that he did that?
> Ahmeenah Young: There may be some, and that is why we have taken his hard drive, and I think that is the part of it and it is going off to an expert, a forensic expert.
> Jeff Cole: A Center spokesperson would only say Thursday that David Morgenstern and the Pennsylvania Convention Center had parted ways. His attorney says the Pennsylvania Attorney General has been made aware of the allegations.
> William Brennan: From what I have reviewed, there is absolutely no indication at all, that there was involvement with any individual, any girl, under the age of 18 years old.
> Jeff Cole: He said she was 23. But now you know.

> David Morgenstern: She signed up, she was 23, and when she said she was younger, I ended it.
> Jeff Cole: Jeff Cole, Fox 29 Undercover.
> Dawn Stensland: A Convention Center spokesperson confirmed the Attorney General's office has been made aware of the allegations and says it will provide anything the Attorney General asks for.  Morgenstern's lawyer says he has not been contacted by the Attorney General, he adds that his client is considering his options.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

Morgenstern has alleged a violation of his procedural due process rights, a violation of his equal protection rights, and negligence against the PCCA defendants. PCCA defendants have moved to dismiss Morgenstern's procedural due process and negligence claims for failure to state a claim.

I.   Procedural Due Process

PCCA defendants argue that Morgenstern's complaint fails to state a civil rights claim under 42 U.S.C. § 1983 for deprivation of his liberty interest in his reputation without procedural due process in violation of the Fourteenth Amendment of the United States Constitution because PCCA defendants' statements were not false and because he did not request a name-clearing hearing to trigger a procedural due process claim. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property" and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006), citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). The Supreme Court held in Wisconsin v. Constantineau, 400 U.S. 433 (1971) that an individual has a protectable interest in his reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. at 437. Courts have subsequently clarified that "reputation alone is not an interest protected by the Due Process Clause." Versarge v. Township of Clinton, New Jersey, 984 F.2d 1359, 1371 (3d Cir.1993), citing Paul v. Davis, 424 U.S. 693 (1976). Rather, to make out a due process claim for deprivation of a liberty

interest in reputation,[1] a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest, referred to as the stigma-plus test. Paul, 424 U.S. at 701.

In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination" it deprives the employee of a protected liberty interest. Codd v. Velger, 429 U.S. 624, 628 (1977). The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing. Id. at 627. The Court of Appeals has not determined whether a plaintiff who prevails on a "stigma-plus" claim may be entitled to remedies other than a name-clearing hearing. Hill, 455 F.3d at 236.

To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false. Hill, 455 F.3d at 236 (internal citations omitted). Morgenstern has sufficiently alleged that PCCA defendants defamed him by informing Dougherty about the allegations against him and through their statements in the Reports and the Articles, fulfilling the requirement that the statements be public.

Morgenstern has also pled that the statements made by PCCA defendants to the press and to Dougherty were false in that they implied that Morgenstern "had been involved in improper communications with female under the age of majority." However, PCCA defendants argue that the statements were not false as they were merely true recitations of the allegations against him.

---

[1] While damage to reputation alone is best vindicated with a state defamation claim, state law immunity doctrine often prevents such claims from being brought against government actors. Hill, 455 F.3d at 236. Morgenstern here acknowledges that he cannot assert a claim of defamation against PCCA defendants.

They argue that just because the allegations were not proven to be true does not mean that the statements describing the allegations and the investigation that did take place are false. The Court of Appeals has held that truthful disclosure of a pending investigation does not stigmatize the plaintiff so long as the government officials did not begin an investigation in bad faith or for improper motives. Ersek v. Township of Springfield, 102 F.3d 79, 85 (3d. Cir. 1996). Here, Morgenstern has not alleged that the investigation was begun in bad faith or for improper motives, nor has he sufficiently alleged that the statements made by PCCA defendants to the press as published in the Reports and the Article were false. As I find that the statements made to the press were accurate statements about the allegations against Morgenstern, they were not false statements and do not satisfy the second part of the stigma prong. However, it is as yet unclear what statements were made to Dougherty or others about the allegations. Morgenstern alleges that Carraquillo and Mezzaroba, either directly or through an unknown individual, told Dougherty about these allegations between April 6, 2007 and June 11, 2007. This is sufficient to allow this claim to proceed with discovery. Morgernstern's complaint thus adequately alleges the "stigma" prong of the "stigma-plus" test regarding these disclosures only.

To satisfy the "plus" prong of the test, the Supreme Court has stated that the"plus" had to be an alteration or extinguishment of "a right or status previously recognized by state law." Paul, 424 U.S. at 711. The Court of Appeals has held that a public employee who is defamed in the course of being terminated or constructively discharged satisfies the "stigma-plus" test even if, as a matter of state law, he lacks a property interest in the job he lost. Hill, 455 F.3d at 238. Here, Morgenstern has alleged that he was defamed in the course of being terminated, satisfying the "plus" prong of the test.

PCCA defendants also argue that Morgenstern failed to state a valid claim because he has not alleged that he requested a name-cleaning hearing or that PCCA defendants rejected any such request. Morgenstern responds that no law in the Third Circuit requires that he request a name-clearing hearing to trigger a claim for a lack of procedural due process. He further notes in his sur-reply that he requested an investigation and requests leave to amend his complaint to allege specifically that a name-clearing hearing was requested without conceding that such a request is required by law.

A federal constitutional claim arises not from the defamatory or stigmatization conduct per se but from the request and denial of a name-clearing hearing. Schlichter v. Limerick Tp., 2005 WL 984197, at *8 (E.D. Pa. April 26, 2005) (internal citations omitted). However, the Court of Appeals has specifically decided not to make a determination as to whether a request for a name-clearing hearing is required to trigger a procedural due process claim while noting that a letter prior to initiating a lawsuit indicating that the plaintiff had not been permitted to respond to the defendant's accusations was probably sufficient. Ersek, 102 F.3d at 84 n.8. Here, Mezzaroba offered Morgenstern two choices: to resign immediately or to go on family-medical leave pending an investigation into the truth of the allegations against him. Morgenstern's decision to go on family-medical leave pending an investigation and his statements to Mezzaroba challenging the truth of the allegations constitute a request to clear his name. This is sufficient to trigger a procedural due process claim under Ersek. I will therefore deny PCCA defendants' motion to dismiss Morgenstern's 42 U.S.C. § 1983 claim for deprivation of his liberty interest in his reputation without procedural due process for statements made to Dougherty about the allegations against Morgenstern only.

II.    Negligence

PCCA defendants argue that Morgenstern has failed to state a claim of negligence against them because he fails to show a duty "to forbear from perpetuating false and inflammatory information" about him. Morgenstern admits that he cannot sustain a claim of defamation against PCCA defendants because of their status as a state agency that enjoys protection from litigation under sovereign immunity[2] and has instead argued that I should recognize an action in negligence. The cause of action for defamation was developed to create a strong legal standard as a hurdle to punishing defamatory speech because of its conflict with the First Amendment's right to free speech. Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) (J. Brennan dissenting), presenting the history of the cause of action of defamation. A plaintiff who is unable to allege a cause of action in defamation against an individual or agency protected by sovereign immunity, like PCCA defendants, may argue that defendants have deprived him of his liberty interest in his reputation without procedural due process, Hill, 455 F.3d at 236, as Morgenstern has successfully pled here. While Morgenstern cites a case to establish the negligence standard, Holt v. Navarro,

---

[2] PCCA is a Commonwealth agency under 64 Pa. C.S.A. § 6018, so it is protected by sovereign immunity under 1 Pa. C.S.A. § 2310. There are only nine statutory exceptions to the Commonwealth's sovereign immunity: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous road conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522. Stackhouse v. Commw. of Penn. State Police, 892 A.2d 54, 59 (Pa. Commw. 2006). Defamation is not included among these specifically designed exceptions to governmental immunity, Keim v. County of Bucks, 275 F. Supp.2d 628, 638 (E.D. Pa. 2003), so even if Morgenstern had been able to show a duty, the claim against PCCA, and potentially the claims against Carrasquillo and Mezzaroba, would be barred by sovereign immunity. Because I am finding that Morgenstern has failed to plead a cause of action in negligence, I will not address his arguments that defendants Sylvia Carrasquillo and Albert Mezzaroba were not protected by sovereign immunity because they were acting outside the scope of their employment when they made the defamatory statements at issue.

932 A.2d 915, 920 (Pa. Super. Ct. 2007), this case does not address a duty in the context of defamation. Morgenstern has provided me with no legal authority to support the proposition that he has a cause of action in negligence. As Morgenstern has failed to show that PCCA defendants have a duty in this case, and cannot find that such a duty exists, he has failed to state a vital element in the tort of negligence. I will grant PCCA defendants' motion to dismiss the claim of negligence.[3]

---

[3] As I am finding that no duty exists, I will not address PCCA defendants' arguments that there was no breach.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID MORGENSTERN | : | CIVIL ACTON |
| | : | NO. 08-0562 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA CONVENTION | : | |
| CENTER AUTHORITY d/b/a/ | : | |
| PENNSYLVANIA CONVENTION | : | |
| CENTER, ALBERT MEZZAROBA and | : | |
| SYLVIA CARRASQUILLO | : | |

**ORDER**

AND NOW, this 31st day of October 2008, upon consideration of PCCA defendants' motion to dismiss, plaintiff's response, defendants' reply, and plaintiff's sur-reply thereto, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1) PCCA defendants' motion to dismiss on the count of procedural due process is DENIED,

2) PCCA defendants' motion to dismiss on the count of negligence is GRANTED. Judgment is entered in favor of defendants Pennsylvania Convention Center Authority d/b/a/ Pennsylvania Convention Center (PCCA), Albert Mezzaroba, Sylvia Carrasquillo and against plaintiff David Morgenstern on this count.

/s/ THOMAS N. O'NEILL, JR.
THOMAS N. O'NEILL, JR., J.