IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID MORGENSTERN | : | CIVIL ACTON |
|  | : | NO. 08-0562 |
| v. | : |  |
|  | : |  |
| FOX TELEVISION STATIONS OF | : |  |
| PHILADELPHIA d/b/a/ FOX 29 | : |  |
| PHILADELPHIA, FOX TELEVISION | : |  |
| STATIONS, INC., JEFF COLE, | : |  |
| PHILADELPHIA MEDIA HOLDINGS, | : |  |
| LLC, d/b/a PHILADELPHIA DAILY | : |  |
| NEWS, DAVE DAVIES, GAR JOSEPH, | : |  |
| INTERNATIONAL BROTHERHOOD | : |  |
| OF ELECTRICAL WORKERS, LOCAL | : |  |
| 98, and JOHN J. DOUGHERTY | : |  |

O'Neill, J.                                                    October 31, 2008

MEMORANDUM

Plaintiff David Morgenstern filed a complaint against defendants Pennsylvania

Convention Center Authority d/b/a/ Pennsylvania Convention Center (PCCA), Albert

Mezzaroba, Sylvia Carrasquillo, Fox Television Stations of Philadelphia d/b/a/ Fox 29

Philadelphia, Fox Television Stations, Inc., Jeff Cole, Philadelphia Media Holdings, LLC, d/b/a

Philadelphia Daily News, Dave Davies, Gar Joseph, International Brotherhood of Electrical

Workers, Local 98 and John J. Dougherty for claims surrounding a PCCA investigation into and

subsequent media attention about a false allegation that he was conducting an online relationship

with a 15-year-old girl.  Morgenstern's complaint alleges claims of defamation, defamation per

se, false light invasion of privacy, intentional infliction of emotional distress and negligence.

against defendants Fox Television Stations of Philadelphia d/b/a/ Fox 29 Philadelphia, Fox

Television Stations, Inc., Jeff Cole (referred to collectively as Fox defendants) and Philadelphia

Media Holdings, LLC, d/b/a Philadelphia Daily News, Dave Davies, Gar Joseph (referred to collectively as PDN defendants) and International Brotherhood of Electrical Workers, Local 98 and John J. Dougherty (referred to collectively as IBEW defendants). Fox defendants and PDN defendants will be referred to collectively as media defendants. Before me now are defendants' motion to dismiss, plaintiff's response, defendants' reply, and plaintiff's sur-reply.

BACKGROUND

Plaintiff David Morgenstern was employed at the Pennsylvania Convention Center Authority (PCCA) for more than 10 years and was serving as Acting Director of Event Services when he was summoned to the offices of defendant Albert Mezzaroba on April 6, 2007. There, Morgenstern was informed that a father had complained to PCCA that Morgenstern was having inappropriate internet contact of a sexual nature with his 15-year-old daughter. While Morgenstern acknowledged his internet communications with the female, and admitted that the contact was not work related, he told Morgenstern that she had represented herself to be 23 years old. Mezzaroba offered Morgenstern the option of resigning or taking a family-medical leave of absence while an investigation into the allegations was completed. Morgenstern submitted a written request for a leave of absence to Sylvia Carrasquillo the following day and the leave request was approved.

Defendant John Dougherty of the International Brotherhood of Electrical Workers, Local 98 (IBEW) somehow learned of the allegations against Morgenstern sometime between April 6, 2007 and June 11, 2007. Dougherty admitted in a subsequent interview for a Pennsylvania Daily News Article (Article) to passing along the information about the investigation to defendant Jeff Cole of defendant Fox 29 (the Cole Comment).

Cole, acting upon Dougherty's tip, recorded an unannounced interview at Morgenstern's

home on June 11, 2007.  The report (First Report) ran that night in the Fox 29 evening news

broadcast.  A transcript of the First Report is reprinted below:

>Dawn Stensland: A manager at the Philadelphia Convention Center is at the center of controversy after his boss receives a complaint about on-line contact with a 15 year-old girl.
>
>Dave Huddleston: It is a Fox 29 Undercover exclusive tonight. Jeff Cole is here with the story.  Jeff.
>
>Jeff Cole: Dave, his name is David Morgenstern and he is the Acting Director of the Events Services at the Convention Center.  He has worked there for over ten years, but tonight he is on leave while Convention Center authorities await the results of an investigation of his on-line activities.
>
>Jeff Cole: The Convention Center manager is this man, David Morgenstern.  His job is to be one of the go-to guys in this set-up for the big trade shows and exhibits that come here.  But about two months ago, Morgenstern went on family and medical leave after a man, claiming to the father of a 15 year-old girl, accused him of having an inappropriate on-line relationship with his daughter.
>
>Jeff Cole: Mr. Morgenstern….. We asked Morgenstern about the claim Monday.
>
>David Morgenstern: It is not true.
>
>Jeff Cole: What is true about it?
>
>David Morgenstern: I wasn't suspended, I am on medical leave.
>
>Jeff Cole: Because of it?
>
>David Morgenstern: I don't want to talk to the press.
>
>Jeff Cole: Sir, before you go, I'm told the father of a 15 year-old called to complain about you.  Is that correct?
>
>David Morgenstern: She said she was 23.
>
>Jeff Cole: She said she was 23?  Sir, one other thing.
>
>Jeff Cole: According to a Convention Center spokesperson, the Center's CEO, Al Mezzaroba, seen here in file video but who was on vacation and not available for comment, took the call from the father, questioned David Morgenstern, and opened an investigation.
>
>Jeff Cole: The Center's Executive Vice President, Ahmeenah Young says, the e-mails have been described to her as sexual in nature. She said the Center wants to know if Morgenstern sent them, and did he do it from a Convention Center computer.
>
>Jeff Cole: Is there any indication that he did that?
>
>Ahmeenah Young: There may be some, and that is why we have taken his hard drive, and I think that is the part of it and it is going off to an expert, a forensic expert.
>
>Jeff Cole: Young says the Center is awaiting reports from that expert and an outside law firm in the next ten days.  But despite knowing about the claim of the inappropriate on-line relationship with a 15 year-old girl for two months, Convention Center authorities

3

have not notified law enforcement.

Jeff Cole: Have you alerted the authorities?

Ahmeenah Young: No, we have not alerted the authorities.

Jeff Cole: Why won't you alert the authorities if you believed it was inappropriate with a 15 year-old?

Ahmeenah Young: Why hasn't the father alerted the authorities?  I think that is a question for the father.  If he has the e-mails, he has seen it, if we need to alert the authorities we absolutely will.

Jeff Cole: A spokesperson for the Convention Center at first said the original call of complaint was anonymous.  But when Fox Undercover told him that we have learned the name of the 15 year-old, the spokesperson later called back to say that in fact, the caller had identified himself as the father of the 15 year-old, had left his name, and a cell phone number.

Jeff Cole: In the meanwhile, the leader of the area's electrical workers union, whose members work at the Convention Center says he raised similar concerns about David Morgenstern four years ago.

John Dougherty: I had asked for some answers, and at the time, I was told that it was nothing like I had suggested, and that they were going to handle it, and they were just going to get some people help.

Jeff Cole: And late Tuesday, Morgenstern claimed he did not use Convention Center computers to contact the girl and says he is no longer in touch with her.

Jeff Cole: Mr. Morgenstern, Mr. Morgenstern, you believe that this young woman was 23.

David Morgenstern: She said she was 23.

Jeff Cole: She said she was 23?  But now you know…

David Morgenstern: She signed up she was 23 and when she said she was younger, I ended it.

Jeff Cole: Convention Center officials say they will turn over the results of their investigation to the police or the attorney general no matter what is found. They say the father was calling from a southern state and add [sic] he demanded that Morgenstern be fired. Jeff Cole, Fox 29 Undercover.

On June 22, 2007, the Philadelphia Daily News ran the Article written by Dave Davies

and Gar Joseph regarding the allegations against Morgenstern.  The Article was advertised on the

front page as "Sexcapade at the Convention Center" and was written as follows:

Did Pennsylvania Convention Center officials try to cover up a sex scandal?  Or were they keeping a personnel matter private, as they are obliged to do?

The issue became public last week when Fox 29 investigative reporter Jeff Cole revealed that David Morgenstern, acting director of events services, was suspected of sex chat with a 15-year-old girl on a Convention Center computer.

4

The underage girl's father discovered the chat in April.  He complained to Convention Center President Al Mezzaroba.

Mezzaroba launched an internal investigation, seized Morgenstern's computer hard drive and placed him on paid "family-medical" leave.

Here's what Mezzaroba didn't do: Contact law enforcement.

"There's nothing in the criminal code that would require Convention Center executives to contact the authorities," said Kevin Harley, spokesman for state Attorney General Tom Corbett, "but I'd say you have a moral and ethical obligation, particularly actions of this type, to report it."

Mezzaroba said he believed it was the duty of the girl's father, whom he described only as a man living in a southern state, to call authorities.

"We're not sure a crime has been committed," Mezzaroba said.  Convention Center board chairman Buck Riled "has made a promise that whatever is discovered will be turned over to the attorney general."

"I didn't know the Convention Center was an investigative body," said Harley.

No one has alleged criminal activity against Morgenstern, who told Cole in a brief interview that the underage girl claimed to be 23.

"The only allegation is misuse of a computer," Mezzaroba said.  "Our obligation is to make sure an employee didn't do anything improper on our time."

He declined to discuss details of the case since it's a personnel matter.

Harley said whether a crime was committed would depend on the nature of the conversations with the teen girl and whether pornography was exchanged.

"If the Convention Center would like to share their information with us, we'd certainly be interested in pursuing it," Harley said.

Meanwhile, John Dougherty, head of the Redevelopment Authority, which has been acquiring land for the Convention Center's expansion, told Fox 29 that he'd raised the issue of sexual impropriety among center employees four years ago.

A Convention Center source told us that Morgenstern was admonished by management several years ago for improper use of his computer.  The nature of the improper use couldn't be determined.

Our guess is that Convention Center officials would like Dougherty to keep quiet about this.

"Whenever Doc has had a chance to take a shot at the [Convention Center] board, he has," said Mezzaroba.  "Before he had [former board chairman] Michael Nutter to shot at, but now I guess he just has me."

Dougherty returned fire saying, "It's a shame that this is Al Mezzaroba's management style: politics, politics, politics.  I've just finished working with the board and the governor to put together a successful acquisition of land [for the expansion] in record-setting time and at a lower price than expected, so I have no problem with the board."

Dougherty said he blabbed to Fox 29 because "there are a lot of uneasy people at the Convention Center because they know some of the activities going on there might not be illegal, but are very immoral and very unethical."

He declined to elaborate.  But we have a feeling another shoe or two will drop before this saga ends.

On July 2, 2007, Morgenstern avers that Carrasquillo summoned him to the PCCA office and, according to Morgenstern, "abruptly terminated" his employment for violations of the computer-use policies without stating any conclusions about the nature of his contact with the woman or any conclusions about her status as a minor.

On July 5, 2007, Cole ran a follow-up report on the Fox 29 evening news (Second Report).  Morgenstern alleges that the Second Report also portrayed him as having had inappropriate contact with a minor and that it suggested that the prior allegations against him had been confirmed by his termination.  A transcript of the Second Report reads as follows:

> Dawn Stensland: The Pennsylvania Convention Center says tonight that it has parted ways with a top employee.  While the worker's attorney says he has been terminated and is not sure why.  Fox 29 Undercover reporter Jeff Cole first reported this story of David Morgenstern. Here is Jeff with the latest.
> Jeff Cole: There was no answer at David Morgenstern's Northeast Philadelphia home Thursday, but not long after we knocked, there came a call from his attorney, who confirmed Morgenstern is no longer a Convention Center worker.
> William Brennan: He has been terminated.  He was notified on Monday that the Center has terminated his employment.
> Jeff Cole: Brennan says Morgenstern who held the job of Acting Director of Event Planning does not fully understand why he has been fired.  In June, Fox 29 Undercover reported Morgenstern went on family medical leave in April after the Convention Center says a man claiming to be the father of a 15 year-old girl accused him of having an inappropriate, on-line relationship with his daughter.  Last month Morgenstern quickly spoke to us.
> Jeff Cole: Sir, before you go.  I'm told the father of a 15-year-old called to complain about you.  Is that correct?
> David Morgenstern: She said she was 23.
> Jeff Cole: She says she was 23?
> Jeff Cole: The call came from a southern state says the Convention Center and was taken by the Center's CEO, Al Mezzaroba, who opened an investigation.  A Center Vice President said in June she understood the on-line contact to be sexual in nature and said the Center had hired a law firm to investigate if Morgenstern had been in contact with the girl and if he had done it on Convention Center computers.

6

Jeff Cole: Is there any indication that he did that?

Ahmeenah Young: There may be some, and that is why we have taken his hard drive, and I think that is the part of it and it is going off to an expert, a forensic expert.

Jeff Cole: A Center spokesperson would only say Thursday that David Morgenstern and the Pennsylvania Convention Center had parted ways.  His attorney says the Pennsylvania Attorney General has been made aware of the allegations.

William Brennan: From what I have reviewed, there is absolutely no indication at all, that there was involvement with any individual, any girl, under the age of 18 years old.

Jeff Cole: He said she was 23.  But now you know.

David Morgenstern: She signed up, she was 23, and when she said she was younger, I ended it.

Jeff Cole: Jeff Cole, Fox 29 Undercover.

Dawn Stensland: A Convention Center spokesperson confirmed the Attorney General's office has been made aware of the allegations and says it will provide anything the Attorney General asks for.  Morgenstern's lawyer says he has not been contacted by the Attorney General, he adds that his client is considering his options.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  A well-pleaded

7

complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

Morgenstern has alleged claims of defamation/defamation per se, false light invasion of privacy, intentional infliction of emotional distress and negligence against the IBEW defendants and the media defendants. The IBEW defendants have moved to dismiss all claims against Dougherty for failure to state a claim upon which relief can be granted and, because no claim succeeds against Doughtery, to dismiss the vicarious liability claims against IBEW for failure to state a claim. The media defendants have moved to dismiss all claims for failure to state a claim upon which relief can be granted and asserted affirmative defenses.

I.      Defamation/Defamation per se

Under Pennsylvania law, a plaintiff in a defamation action has the burden of proving the following:  (1) the communication was defamatory; (2) publication by the defendant; (3) the communication applies to plaintiff; (4) the recipient of the communication understands the communication's defamatory meaning; (5) the recipient understands the communication to be intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication;[1] and

---

[1]  Morgenstern need not prove special harm because Pennsylvania recognizes an exception to this general rule for slander actions. A plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se. Clemente v. Espinosa, 749 F. Supp. 672, 677 (E.D. Pa. 1990). Only four categories of words may constitute slander per se:   words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. Id., Restatement (Second) of Torts § 570 (1977). Morgenstern claims and sufficiently pleads that the alleged defamatory remarks

(7) abuse of a conditionally privileged occasion.  See 42 Pa.C.S.A. § 8343; see also Fanelle v. LoJack Corp., 79 F. Supp.2d 558, 561 -562 (E.D. Pa. 2000).  The defendant bears the burden of proving (1) the truth of the defamatory communication; (2) the privileged character of the publication; and (3) that the subject matter was of public concern.  Id.

The first question in an action for defamation is whether such statements are capable of defamatory meaning.  Marcone v. Penthouse International Magazine for Men, 754 F.2d 1072, 1078 (3rd Cir. 1985), cert. denied, 474 U.S. 864 (1985).  A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.  Cosgrove Studio and Camera Shop, Inc. v. Pane, 182 A.2d 751, 753 (Pa. 1962).  In reaching a determination, a court must consider not only the language of the statements but also the context in which they were published.  Pierce v. Capital Cities Communications, Inc., 576 F.2d 495, 502 (3d Cir. 1978), cert. denied, 439 U.S. 861 (1978).  "[W]hether a communication is capable of defamatory meaning depends upon what a recipient 'correctly, or mistakenly but reasonably, understands' that the statement was intended to express."  Id., quoting Restatement (Second) of Torts § 563 (1977)).

A.     IBEW Defendants

Morgenstern claims that Dougherty and, through vicarious liability, IBEW, are liable for defamation by reason of Dougherty's statement in the First Report and the Cole Comment.  Dougherty's statement in the First Report is not capable of defamatory meaning.  The statement is:  "I had asked for some answers, and at the time, I was told that it was nothing like I had

_____

constitute slander per se in that they impute to him both a criminal offense and serious sexual misconduct.

suggested, and that they were going to handle it, and they were just going to get some people

help." This statement does not tend to harm the reputation of another so as to lower him in the

estimation of the community or to deter third persons from associating or dealing with him.

Cosgrove,182 A.2d at 753. In fact, this does not suggest much of anything about anyone. Thus, I

find this statement not to be defamatory.

Second, Morgenstern sufficiently pled a defamation claim for Dougherty's statement

involved in the Cole Comment which states: "Mr. Dougherty, acting on behalf of IBEW 98,

exacerbated the damage caused by the false allegations when he advised Fox Television, Fox 29,

and Mr. Cole that Mr. Morgenstern had, indeed engaged in inappropriate communications with a

15-year old." IBEW defendants argue that "inappropriate communications" is not sufficiently

specific to be defamatory.

The first question is whether the statement is capable of defamatory meaning.

"Inappropriate communications with a 15-year old" girl is capable of defamatory meaning. It

implies that Morgenstern's communications were of a pedophiliac nature. I do not agree with

IBEW defendants' suggestion that it merely implies communications with a person on a PCCA

computer were inappropriate. While Morgenstern was fired for the communications because

they were inappropriate regardless of the age of the recipient, a statement including the allegation

that the person receiving the communications was a minor would harm the reputation of plaintiff

in the estimation of the community or deter third persons from associating or dealing with him as

they would likely believe him to be accused of being a pedophile. Id. Morgenstern has also

sufficiently pled the remaining factors in demonstrating a claim of defamation. He has

sufficiently pled publication; indeed, Dougherty admitted that he leaked the some information

10

about the allegations against Morgenstern to Fox in the Article .  Morgenstern has also pled that

the Cole Comment applies to the him and that the recipient of the communication, Jeff Cole,

understood the communication's defamatory meaning and understood the communication to be

intended to apply to Morgenstern.  Thus, Morgenstern has successfully pled a claim of

defamation for the Cole Comment against Dougherty.

IBEW contends that, even if a defamation claim against Dougherty proceeds, it is not

liable for any statements by Dougherty in this matter because he was not acting within the scope

of his employment and was not under IBEW's control when he made these statements.

Morgenstern argues that IBEW is vicariously liable because the only reason that Dougherty had

an interest in leaking the information was that IBEW is in a "feud" with PCCA and that

Dougherty allowed himself to be referred to as a "leader of the area's electrical workers union" in

the First Report.

"[A]n employer is held vicariously liable for the negligent acts of his employee which

cause injuries to a third party, provided that such acts were committed during the course of and

within the scope of the employment."  Belt v. GEO Group, Inc., 2007 WL 1030530, at *6 (E.D.

Pa. Apr. 4, 2007), citing Costa v. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa. Super.

Ct. 1998).  Liability of the employer may extend to intentional acts or criminal acts committed by

an employee.  Id.  An employee's conduct is considered "within the scope of employment" if:  (1)

it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially

within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to

serve the employer; and (4) if force is intentionally used by the employee against another, the use

of force is not unexpected by the employer.  Id., citing Restatement (Second) of Agency, § 228.

11

Generally, the question of whether an employee acted within the scope of his employment is a matter for a jury to decide.  See Fitzgerald v. McCutcheon, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979), citing Orr v. William J. Burns Int'l Detective Agency, 12 A.2d 25, 27 (Pa. 1940). However, when an "employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law."  Id.  In the present case, the behavior Morgenstern alleges is not so dangerous or excessive to warrant dismissing the claim as a matter of law and IBEW does not allege otherwise.  While Dougherty cannot be held responsible for the title given to him in the First Report unless he supplied it to reporter Jeff Cole, plaintiff has sufficiently pled that Dougherty's actions were actuated, at least in part, by a purpose to serve the employer.  Until discovery has been completed, it would be difficult to determine whether Dougherty spoke to Cole within the authorized time and space limits and whether this statement is of a kind and nature that he was employed to perform, but Morgenstern has sufficiently alleged that Dougherty was acting under the control of IBEW.  Viewing the facts in the light most favorable to plaintiff, Morgenstern has sufficiently stated a claim for the vicarious liability of IBEW for the actions of Dougherty.  I will therefore deny IBEW defendants' motion to dismiss the claim of defamation.

B.      Media Defendants

Morgenstern alleges that Fox defendants are liable for defamation for the statements in the First Report and the Second Report and PDN defendants are liable for defamation for the statements in the Article.  The first question in an action for defamation is whether such statements are capable of defamatory meaning.  Marcone, 754 F.2d at 1078.  The statements contained within the First or Second Reports and the Article are capable of defamatory meaning.

12

Media defendants argue that, taken as a whole, the context of the article makes it clear that this was only an investigation and, therefore, the statements were not defamatory.  It is reasonable to infer from the Article or the First or Second Reports that Morgenstern was communicating with a 15-year-old girl and that the relevant investigation was into whether the communications with an under-aged girl were improper, not whether plaintiff was in communications with a 15-year-old girl or someone over the age of majority.  The impression that one is a pedophile could certainly "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Cosgrove, 182 A.2d at 753.  In the First Report and the Article, the age of the girl at issue is stated as an undisputed fact without any indication that her age was at issue.  Time, Inc. v. Pape, 401 U.S. 279, 292 (1971), stating that "[n]othing in this opinion is to be understood as making the word 'alleged' a superfluity in published reports of information damaging to reputation."  While it is unclear whether media defendants had notice that there was a dispute about the age of the female in question based on Morgenstern's statements in the First Report state that "She signed up, she was 23, and when she said she was younger, I ended it," Morgenstern has sufficiently alleged that the statement was capable of defamatory meaning.  As it is undisputed that the media defendants published the statements alleged by Morgenstern and that the communications apply to Morgenstern as they clearly state his name, Morgenstern's claim is sufficient to survive a motion to dismiss.

Media defendants have also raised affirmative defenses under 42 Pa.C.S.A. § 8343.  They argue that this is a matter for public concern and that Morgenstern must also show falsity to sustain a prima facie case.  Here, it appears to be undisputed that this case is a matter of public concern.  PCCA is a public agency and this case concerns an investigation of its employees and

13

their usage of public computers, so the case is a matter of public concern.  Jones v. City of Philadelphia, 73 D. & C. 4th 246, 264 (C.P. Phila. 2005), aff'd, 893 A.2d 837 (Pa. Commw. 2006).

Pennsylvania had applied the common law presumption that defamatory speech is false, thereby placing the burden on the defendant to prove the veracity of the statements at the center of the controversy, but the United States Supreme Court has negated this presumption, at least for defamation cases in which the alleged defamatory statements are matters of public concern. Wilson v. Slatalla, 970 F. Supp. 405, 422 (E.D. Pa. 1997).  In Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 776 (1986), the Supreme Court held that in a defamation action where the alleged defamatory statements are a matter of public concern the plaintiff must prove fault on the part of the defendants, as well as the falsity of the allegedly defamatory statements.  This holding contradicted the common law rule on falsity – that the defendant bears the burden of proving truth in a defamation action.  Id.  A claim for defamation will fall even if the report contains minor inaccuracies and errors so long as it is "substantially true."  Dunlap v. Philadelphia Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982).  As the United States Supreme Court wrote in Masson v. New Yorker Magazine, Inc.:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.  Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."

501 U.S. 496, 497 (1991) (internal citations and quotation marks omitted).

However, under Federal Rule of Civil Procedure 12(b)(6), determination of the substantial truth of the First and Second Reports and Article at this stage is not appropriate.  In

14

deciding a motion to dismiss, the court must accept all of plaintiff's factual allegations as true.
Nami, 82 F.3d at 65.  Morgenstern has pled sufficiently in his complaint that the statements in
the First and Second Reports and the Article were false and defamatory.

Media defendants also claim that they are protected under the fair report privilege.
Pennsylvania law recognizes the right of the press to publish fair and accurate accounts of
judicial or official proceedings without regard to the truth or falsity of the information contained
within those proceedings under the fair report privilege.  Medico v. Time, Inc., 643 F.2d 134 (3d
Cir. 1980), cert. denied, 454 U.S. 836 (1981); Denenberg v. American Family Corp. of
Columbus, Ga., 566 F. Supp. 1242, 1254 n.12 (E.D. Pa.1983); Binder v. Triangle Publications,
Inc., 275 A.2d 53, 56 (Pa. 1971).[2]  It is defendant's burden in the first instance to establish the
existence of a privileged occasion and then the trial court must determine whether the occasion
upon which the defendant published the defamatory matter gives rise to the privilege.  Oweida v.
Tribune-Review Pub. Co., 599 A.2d 230, 235 (Pa. Super. Ct. 1991).  Media defendants have not
alleged that the statements were from official reports or summarizing official proceedings which
are the only statements the privilege protects.  DeMary v. Latrobe Printing and Pub. Co., 762
A.2d 758, 765 (Pa. Super. Ct. 2000), noting that the fair report privilege did not apply to preclude
newspaper's liability for publishing allegedly defamatory statement purportedly made by citizen
while township board meeting was in recess.  Thus, media defendants have not established the
existence of a privileged occasion so it does not appear that this defense will bar Morgenstern's

---

[2]  The Pennsylvania Supreme Court declined to recognize the neutral report privilege
which would immunize media defendants from liability when they accurately report newsworthy-
but-defamatory statements made by others regardless of the reporter's private views of the truth
or falsity of those statements in Norton v. Glenn, 860 A.2d 48 (Pa. 2004), cert denied, 544 U.S.
956 (2005).

defamation claim. Under Federal Rule of Civil Procedure 12(b)(6), resolution of the question of

privilege of the Reports and the Article is not appropriate at this stage.  Therefore I will not

dismiss Morgenstern's defamation claim against media Defendants..

II.     Under  False Light Invasion of Privacy

        Pennsylvania recognizes four types of actions for invasion of privacy:  intrusion upon

seclusion, appropriation of name or likeness, publicity given to private life, and publicity placing

a person in a false light.  See Fanelle v. LoJack Corp., 79 F. Supp.2d 558, 563 (E.D. Pa. 2000);

Commonwealth v. Hayes, 414 A.2d 318, 324-25 (Pa. 1979), cert. denied, 449 U.S. 992 (1980);

Restatement (Second) of Torts, §§ 652A-652E (1977).  Plaintiff alleges a claim for publicity

placing a person in false light.[3]  The Superior Court of Pennsylvania has adopted the Restatement

's definition of the tort of publicity placing a person in a false light, which reads:

> One who gives publicity to a matter concerning another that places the other before the
> public in a false light is subject to liability to the other for invasion of his privacy if
> (a) the false light claim in which the other was placed would be highly offensive to a
> reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the
> publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977).  Fanelle, 79 F. Supp.2d at 563.  The Pennsylvania

Superior Courts have recognized that a false light claim can be established, even if the

information released is true, if the information tends to imply falsehoods.  Larsen v. Philadelphia

Newspapers, Inc., 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988).

        A.      IBEW Defendants

---

    [3]  While parties disagree about which cause of action for false light invasion of privacy
that plaintiff asserts, the plaintiff has specifically stated a claim only for publicity placing a
person in a false light.

Morgenstern alleged a claim of false light invasion of privacy against IBEW defendants based upon the Cole Comment: "Mr. Dougherty, acting on behalf of IBEW 98, exacerbated the damage caused by the false allegations when he advised Fox Television, Fox 29, and Mr. Cole that Mr. Morgenstern had, indeed, engaged in inappropriate communications with a 15-year-old."

This statement satisfies the first element as informing the media that Morgenstern had "engaged in inappropriate communications with a 15-year-old" would be highly offensive to a reasonable person. It implies that Morgenstern had an inappropriate, potentially pedophiliac, relationship with a minor girl. Additionally, Morgenstern pled the second element. He alleges that Dougherty had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Morgenstern would be placed. As previously found, Morgenstern has pled that Dougherty was acting in the scope of his employment at IBEW, so I will deny IBEW defendants' motion to dismiss the claim of false light invasion of privacy.

B.      Media Defendants

Morgenstern alleges that he was portrayed as a pedophile by the statements in the First and Second Reports and in the Article that he was conversing on the PCCA computers with a 15 year old. While neither the First or Second Reports nor the Article use the word "pedophile," their repetition of the claim that Morgenstern was conducting online communication with a 15 year-old girl would lead a reasonable person to infer that the plaintiff was a pedophile. A false implication that one is a pedophile could be highly offensive to a reasonable person, and therefore it satisfies the first element. His false light claim also satisfies the second element. The complaint alleges that the First and Second Reports and the Article were published with reckless disregard for the truth or falsity of the impression it created of plaintiff's guilt. Furthermore, the

17

complaint alleges that the publications were distributed widely to such an extent that the allegedly false impression the publications engendered could be said to have been "made public." Restatement (Second) of Torts § 652D.

Media defendants have argued that Morgenstern cannot assert both defamation and false light invasion of privacy claims. The Restatement (Second) of Torts § 652E, note b, specifically states that when the statement placing the individual in a false light is defamatory "the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity." Restatement (Second) of Torts § 652E, n. b. However, the statement need not be defamatory to sustain a claim for false light invasion of privacy. "When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation." Id. Therefore, I will not dismiss Morgenstern's false light invasion of privacy claim.

Media defendants also argue that the fair report privilege protects the First and Second Reports and the Article from a claim of false light invasion of privacy. However, as discussed above, resolution of the question of whether a privilege exists to protect the First and Second Reports and the Article is not appropriate at this stage.

III.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant's conduct:  (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988), cert. denied, 498 U.S. 811 (1990); Mulgrew v. Sears

Roebuck & Co., 868 F. Supp. 98, 103 (E.D. Pa. 1994); Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998).  In order to state a cognizable claim, the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society."  Fanelle v. LoJack Corp., 79 F. Supp.2d 558, 565 (E.D. Pa. 2000), citing Mulgrew, 868 F. Supp. at 103.  IBEW and media defendants argue that Morgenstern has not demonstrated outrageous and extreme behavior beyond all possible bounds of decency. Morgenstern alleges that not investigating the age of the woman at issue, not questioning whether a name clearing hearing was held and leaking information about the allegations to the media in the Cole Comment constitutes such behavior.

As the Court of Appeals has recognized the "difficulty of providing a precise definition of 'outrageous' conduct," Williams v. Guzzardi, 875 F.2d 46, 51 n.10 (3d. Cir. 1989), the courts look to the Restatement for the type of conduct envisioned by § 46 to be "extreme and outrageous."  The standard has not been met when a defendant has acted with malice, tortious or criminal conduct, or with the intent to inflict emotional distress; liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Weinstein v. Bullick, 827 F .Supp. 1193, 1203 -1204 (E.D. Pa. 1993), citing Restatement (Second) of Torts § 46, comment d; accord Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987).  The Pennsylvania courts rarely declare conduct outrageous.  Cox v. Keystone Carbon, 861 F.2d 390, 395 (3d Cir. 1988), noting that recovery has been allowed "only in limited circumstances where the conduct has been clearly outrageous;" see, e.g., Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979), allowing

19

recovery when the team doctor told reporter that member of team suffered from fatal blood disorder but knew it to be untrue; Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970), allowing recovery against a hit and run driver who removed child's body from scene of accident and buried it in a field without attempting to obtain medical assistance and without notifying the police or the parents.  In Clark v. Falls, a township chief of police and a member of the township's board of supervisors engaged in a sustained campaign against the plaintiff including showing disparaging reports about him to the public, changed his job duties and deprived him of privileges, confirmed to the public that he was being investigated, and forwarded charges against him to the District Attorney.  890 F.2d 611, 624 (3d Cir. 1989).  The Court of Appeals held that "[t]hese acts, while deplorable, do not constitute extreme and outrageous conduct as Pennsylvania has defined those terms."  Id.

With the facts of Clark as guidance, I find that the claim of intentional infliction of emotional distress against IBEW and media defendants must be dismissed.  Viewed against this stringent standard, neither Dougherty's Cole Comment nor media defendants' conduct in failing to investigate independently the age of the woman at hand or whether a name-clearing hearing was held rose to the "extreme and outrageous" level.  As the claim against IBEW is based on vicarious liability for Dougherty's actions and the claim against Dougherty is being dismissed, I will grant IBEW and media defendants' motions to dismiss on Morgenstern's claims of intentional infliction of emotional distress.

IV.    Negligence

IBEW and media defendants argue that Morgenstern's claims that Dougherty was negligent in his statements and that media defendants were negligent in their reporting should be

dismissed because they merely repeat his claim for defamation and no cause of action exists for negligent publication.  Though Morgenstern has successfully pled claims of defamation against IBEW and media defendants, he argues that I should also recognize an action in negligence.

The cause of action for defamation was developed to create a strong legal standard as a hurdle to punishing speech because of its conflict with the First Amendment's right to free speech.  Smith v. Linn, 48 Pa. D. & C.3d 339, 342-44 (C.P. 1988), order aff'd, 563 A.2d 123 (Pa. Super. Ct. 1989), appeal granted, 575 A.2d 568 (Pa. 1990) and order aff'd, 587 A.2d 309 (Pa. 1991), presenting a history of court decisions not to impose a negligence standard for speech. Morgenstern has provided me with no legal authority to support recognizing an action in negligence to allow him to overcome the hurdles created by the defamation standard.  While Morgenstern cites a case to establish the negligence standard, Holt v. Navarro, 932 A.2d 915, 920 (Pa. Super. Ct. 2007), this case does not address a duty in the context of defamatory publication.  As Morgenstern has failed to show that Dougherty, IBEW or media defendants have a duty in this case, nor can I find a duty exists, Morgenstern has failed to state a vital element in the tort of negligence.  As the claim against IBEW is based entirely upon vicarious liability for Dougherty's negligence, Morgenstern has failed to state a claim against IBEW.  I will grant IBEW and media defendants' motions to dismiss the claim of negligence.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID MORGENSTERN                     :                    CIVIL ACTON
                                      :
        v.                            :
                                      :
FOX TELEVISION STATIONS OF            :                    NO. 08-0562
PHILADELPHIA d/b/a/ FOX 29            :
PHILADELPHIA, FOX TELEVISION          :
STATIONS, INC., JEFF COLE,            :
PHILADELPHIA MEDIA HOLDINGS,          :
LLC, d/b/a PHILADELPHIA DAILY         :
NEWS, DAVE DAVIES, GAR JOSEPH         :
INTERNATIONAL BROTHERHOOD             :
OF ELECTRICAL WORKERS, LOCAL          :
98, and JOHN J. DOUGHERTY             :

## **ORDER**

AND NOW, this  31st day of October 2008, upon consideration of defendants' motions to

dismiss, plaintiff's responses, and defendants' replies thereto, and for the reasons stated in the

accompanying memorandum, it is hereby ORDERED that:

1) IBEW and media defendants' motions to dismiss on the counts of defamation/defamation per

se and false light invasion of privacy are DENIED,

2) IBEW and media defendants' motions to dismiss on the counts of intentional infliction of

emotional distress and negligence are GRANTED.  Judgment is entered in favor of defendants

Fox Television Stations of Philadelphia d/b/a/ Fox 29 Philadelphia, Fox Television Stations, Inc.,

Jeff Cole, Philadelphia Media Holdings, LLC, d/b/a Philadelphia Daily News, Dave Davies, Gar

Joseph, International Brotherhood of Electrical Workers, Local 98 and John J. Dougherty and

against plaintiff David Morgenstern on these counts.

/s/ THOMAS N. O'NEILL, JR.
THOMAS N. O'NEILL, JR., J.